GEORGE A. HENDRICKSON, an infant, by Benjamin Hendrickson, his next friend, *vs.* THE CONTINENTAL FIBRE COMPANY, a corporation of the State of Delaware.

(*June* 13, 1927.)

PENNEWILL, C. J., and RODNEY, J., sitting.

*John Biggs, Jr.*, and *Christopher L. Ward, Jr.*, for plaintiff.
*George N. Davis* and *Harry P. Joslyn* for defendant.

Superior Court for New Castle County, May Term, 1927.

No. 149, September Term, 1925.

PENNEWILL, C. J., charging the Jury:

This is an action brought by the plaintiff against the defendant to recover damages for injuries alleged to have been sustained by George A. Hendrickson, while employed as a tube maker by the defendant company, a manufacturer of fibre in this county. The declaration alleges that the plaintiff contracted and suffered certain diseases and afflictions by reason of his person coming in contact with chemicals with which he was caused to work by the defendant in the course of his employment.

It is not denied that the eyesight of George A. Hendrickson has been greatly impaired; it is the cause of the impairment that is in dispute. The plaintiff claims that the sight of his left eye is entirely gone, and that of his right eye nearly so. He claims also that his senses of taste and smell have been destroyed, and that the loss of his sight, taste and smell were all caused by a certain solution called, or known as "Chemical X" with which he was

directed to work as an employee of the defendant in making fibre tubes. The plaintiff contends, not only that his injuries were so caused, but that the defendant was negligent in not protecting him against the dangers of the chemicals with which he was working, and with which dangers the defendant had, or should have had, knowledge. Many acts of negligence are charged in the plaintiff's declaration, and perhaps the court can do no better than summarize for your information the specific charges of negligence set out more fully in the numerous counts.

They are as follows:

That the defendant intentionally concealed the nature of the chemicals with which the plaintiff was working, and failed to inform him that the chemicals were dangerous; that the defendant failed to provide proper means to protect the plaintiff from the action of the chemicals, or to provide a safe and proper place in which to work, and unnecessarily exposed him to the danger; that the defendant caused the plaintiff to work with certain dangerous chemicals without providing proper devices or means to protect him; that the defendant intentionally failed to inform the plaintiff that he was using phosphorous oxychloride and of its dangerous nature, or to provide reasonable means or devices to prevent the phosphorous oxychloride from coming in contact with the plaintiff; that the defendant by deceit induced the plaintiff to continue at work with the said chemicals, including the phosphorous oxychloride; that the defendant failed to inform the plaintiff of the usual and ordinary result to anyone working with the quantity of phosphorous oxychloride that was used; by deceit concealed from the plaintiff the result to be expected, and failed to adopt and provide reasonable rules and regulations to protect the plaintiff from the phosphorous oxychloride; that the defendant by deceit informed the plaintiff that the unknown chemical was "Chemical X" and it was not injurious; that the chemicals used by the defendant combined to give off hydrochloric acid and phosphorous pentachloride, and the defendant by deceit informed the plaintiff that the combination of chemicals given off by the defendants' process were not injurious; that the defendant failed to provide

reasonable devices, means or methods for preventing the phosphorous pentachloride from coming in contact with the plaintiff, or a reasonably safe place to work, or to adopt rules and regulations to prevent such contact; that the defendant failed to adopt and provide reasonable devices and means to prevent the hydrochloric acid from coming in contact with the plaintiff; the plaintiff further alleges that phosphorous trichloride was given off by the combination of chemicals used by the plaintiff, and that the defendant by deceit informed the plaintiff that the combination of chemicals used by the defendant in its process was not injurious and that by reason of such acts the plaintiff was injured.

Such are briefly the acts of omission and commission charged by the plaintiff against the defendant in this case, and which, it is alleged, caused the injuries complained of.

You, of course, understand that these are allegations only, and that in order for the plaintiff to recover he must prove by a preponderance of the evidence that his injuries were caused by the defendants' negligence or fault, and by such negligence or fault as the plaintiff has alleged in some count of his declaration. If his injuries were caused by something other than the defendants' negligence, and the negligence alleged by the plaintiff, there can be no recovery. Neither can there be any recovery if the plaintiff's own negligence contributed proximately to his injuries even though the defendant was also guilty of some negligence.

The defendant denies that it was guilty of any negligence, fault or deceit that caused the plaintiff's injuries, and insists that the chemicals used by the plaintiff in his work for the company were not dangreous, but safe, so that it was not incumbent on the company, and was not necessary to give any particular notice or warning, provide any special protection, publish any rules, or furnish any other place for the workmen, other than such as were given, provided, or furnished. In other words, the defendant claims that it exercised all the care and diligence in and about the work the plaintiff was engaged in that was reasonably required under the existing conditions, and all that a reasonably prudent person would have exercised in a similar case.

The defendant denies that it concealed from the plaintiff, or misrepresented intentionally, or otherwise, any danger incident to the work he was doing or to the chemicals employed in his work, but on the contrary believed they were safe and harmless; and if they were not so the defendant had no knowledge of that fact; that it made every effort that a reasonable person would have made to ascertain whether "Chemical X" was or was not dangerous, and was convinced thereby that it was not dangerous.

■ This case is based on the alleged negligence of the defendant as charged in the plaintiff's declaration. The burden of proving such negligence rests on the plaintiff, and it must be proved to the satisfaction of the jury by a preponderance of the evidence before the plaintiff can recover any damages. Negligence is never presumed; it must be proved. Whethere there was any negligence that caused the injuries complained of, and if any, whose it was, must be determined by the jury from the evidence. Negligence, in a legal sense, is the want of due care, that is, such care as an ordinarily prudent man would exercise under like circumstances. It is the failure to observe, for the protection of another, that degree of care and vigilance which the circumstances justly demand. In order for the plaintiff to recover in this action you must be satisfied by the weight or preponderance of the evidence that the defendant was guilty of one or more of the negligent acts averred in his declaration and that such negligence was the proximate cause of the plaintiff's injuries. There can be no recovery for any injury or disease that was not the result of the defendant's negligence. By "preponderance of the evidence" is meant not the greater number of witnesses, but the greater weight and value of the testimony in the judgment of the jury.

■ ■ It is admitted that the relation existing between the defendant company and the plaintiff, George A. Hendrickson, at the time of the alleged injuries was that of master and servant, and one of the duties imposed upon the master toward the servant in the course of his employment by reason of such relation, was to furnish him a reasonably safe place in which to work and reasonably safe appliances and instrumentalities with which to work. If

the master fails to observe this rule of law and injury results to the servant from such failure the master becomes liable therefor to the servant on the ground of negligence. The servant has the right to rely on the master for the performance of this duty without inquiry on his part. The servant assumes no risk as to such primary duty at the time he enters upon his employment, nor does he assume any risk as to dangers incident to the employment that are not patent, or which may not be seen or known by the exercise of due care. But he does assume all ordinary risks and dangers incident to his employment that are seen and known by him, or which are discoverable by the exercise of due care. When a person enters upon a dangerous employment he assumes the risks ordinarily incident thereto, as well as the risks he may incur from manifest peril. The master is not bound to insure the absolute safety of the applicances or instrumentalities which he provides for the use of the servant. But where the employment is dangerous and the master knows it to be such, or might have known it by the exercise of due care, it is his duty to warn and instruct his servant as to its dangerous character, if by reason of inexperience or ignorance, the servant is unacquainted with the danger; and even if the servant be experienced, it is the duty of the master to warn him of any special or extraordinary danger known to him and connected with the particular employment, if the same was unknown to the servant and could not be seen or known by the exercise of due care. But the servant must exercise reasonable care to avoid injury, such care as the circumstances reasonably require and the greater the known danger, the greater the care required.

If in the course of his employment he becomes aware of the threatened danger, which by the exercise of due care he could avoid but fails to do so and is thereby injured, he must abide by the result of his own negligence. The servant is not bound to obey the orders of his superior directing him to engage in a dangerous service if he knows, or by the exercise of reasonable care might know of the danger in time to avoid injury; and if he, having such knowledge, or opportunity of knowing the danger, nevertheless obeys the

order and exposes himself to the danger and suffers injury therefrom the master cannot be held liable therefor. The duty of the master to warn and instruct the servant regarding the dangers incident to his employment is not an absolute and unqualified one. Whether the servant is instructed and warned or not, if he knows the dangers to which he is exposed, or in the exercise of reasonable care might have known it, in view of his intelligence and experience, and entered upon or continued in the service after acquiring knowledge of its danger, then he assumes the risk and cannot recover.

■ If the master furnishes or makes readily available for the servant appliances the use of which would furnish protection to the servant in the performance of his work, and the servant knowing the danger to be guarded against, fails to use the appliances so provided, and is injured because of such failure, he would be guilty of contributory negligence and could not recover on the ground that the defendant failed to furnish him with proper and suitable appliances, but this would not preclude him from recovering for any other acts of negligence which caused his injuries provided the jury believe the defendant was guilty of such other acts of negligence and the plaintiff was free from negligence.

■■ It is the duty of the master to warn the servant of any danger with which the servant may come in contact in the course of his employment if the danger is unknown to the servant and could not be seen or known by the exercise of due care, provided the master knew the danger or by the exercise of due care might have known it. The test of whether a danger is or is not apparent or obvious to the servant will depend upon whether it would be apparent or discoverable by the average person of the same age, intelligence and experience.[1] The knowledge of the existence of the thing that causes the danger is not necessarily the knowledge of the danger which may arise therefrom. *Kemp v. McNeill Cooperage Co.*, 7 *Boyce* (30 *Del.*) 146, 104 *A.* 630

■ The fact that the master has made a contract with a third party to keep secret the materials or ingredients used in the

---

[1] *Derrickson v. Town of Harrington*, 3 *W. W. Harr.* (33 *Del.*) 412, 138 *A.* 645.

process in which or with which the servant works does not relieve the master of the duty of informing his servant of dangers in the process or employment which the servant did not know and could not know by the exercise of reasonable care, provided the master knew the danger or could have known it by the exercise of such care.

We have already told you that one of the primary duties of the master is to furnish the servant with a reasonably safe place to work and with tools, machinery and appliances to work with which are reasonably safe and adapted to the purposes of the employment. This duty is not fulfilled by merely making appliances available to be used by the servant at his option, if the master was aware of the danger and the servant ignorant thereof. If the master fails to observe the rule of law which requires him to furnish his servant with a reasonably safe place in which to work, and reasonably safe tools, machinery and appliances with which to work, and injury results to the servant from such failure he becomes liable therefor on the ground of negligence. In the performance of this duty the master must use reasonable care and prudence for the safety of the servant, having regard to the character the danger of the employment. The servant is required to exercise due care and caution in the course of his employment to avoid dangers and injuries, for when the master has performed the primary duties required of him, he is not an insurer of the safety of his servants.

If the master knows, or by the use of due diligence might know, that the appliances in use are not reasonably safe for the uses to which they are put, it is negligence on his part to fail to remedy the defects, of which he has knowledge, or by the use of due diligence he might discover. But in such case the master would not be liable if the servant having knowledge of the defect continued to use such appliances.

[12] If the work in which the servant is engaged is dangerous, and of such character and extent that the master and his foreman cannot personally supervise it, it is the duty of the master to adopt and publish rules and regulations reasonably adapted to guard his servants against dangers of which the master has knowledge, or

of which he could have known by the exercise of due care, and of which the servant did not have knowledge and could not have known by the exercise of reasonable care. A breach of this duty would amount to negligence, but the jury are to judge whether the employment was of such character as to require the adoption and publishing of rules and regulations to safeguard it.

■ In occupations attended with unusual dangers and of which the master has knowledge, there should be used such suitable appliances for the prevention of injury as are reasonably obtainable. If the method provided for doing the work involves the safety of those employed in such work it is the duty of the master to use reasonable care to provide a safe method of doing the work if the exercise of reasonable care would produce that result. *Wilczynski v. Penna. R. R. Co.*, 90 *N. J. Law*, 178, 100 *A*. 226.

Any duty to exercise care includes the particular duty of proper care where the matter taken in hand is of a sort requiring more than the knowledge or ability which the average man may be expected to have. The test is whether the defendant has done all that a reasonable person could reasonably be required to do in the exercise of such care.

■ If the master knows, or by the exercise of reasonable diligence could have known, that he is using dangerous instrumentalities in the work in which the servant is employed he is called upon to use a degree of care for the protection of the servant that is reasonably commensurate with the danger. The test is whether the master has done all that a competent person could reasonably be required to do, and would do in a like case.

■ ■ There are one or more counts in the plaintiff's declaration charging that the defendant intentionally concealed the nature of the chemicals used from the plaintiff, and by deceit induced the plaintiff to continue at work with them whereby he was injured; that the defendant by deceit informed the plaintiff that the unknown "Chemical X" and other chemicals, or combination thereof, used by the defendant in its process were not injurious, and that thereby the plaintiff was injured. In respect to these so-called "deceit" counts we say that an employer has no right to

intentionally conceal from his employee the character of the instrumentality he is using in his work if it be dangerous, and if he does so he is guilty of negligence and deceit. But before there can be any recovery by the plaintiff on such deceit counts he must prove actual fraud; the jury must be satisfied from the evidence that the chemicals used by the plaintiff in his work were dangerous, that the defendant knew they were dangerous, or recklessly and without justification stated they were not dangerous, that the alleged deceit was practiced by the defendant for the purpose of inducing the plaintiff to continue at his work, and that his injuries were, at least in part, caused by the deceit or concealment alleged.

This, of course, does not affect other counts in which deceit is not alleged.

The value of expert testimony depends upon the learning and skill of the expert. The jury should take into consideration the expert's means of knowledge and the reasons assigned for the opinion he has given; and give credence to his testimony as they find his qualifications sufficient and his reasons satisfactory. Such testimony is to be carefully considered, like other testimony; it is to be tried by the same tests, and receive just as much weight and credit as the jury may deem it entitled to, viewed in connection with all the other evidence.

The plaintiff claims in this case not only compensatory damages, that is, damages that will compensate him for his injuries, but also exemplary damages. By exemplary damages is meant punitive damages, given by way of example or punishment, and they are not given unless the jury are satisfied that under the law the facts and circumstances of the case require it. The jury must determine from the evidence first, whether they shall award to the plaintiff compensatory damages, and, second, whether in addition to such damages, if given, they should award also exemplary or punitive damages. To justify the giving of exemplary or punitive damages, the jury should be satisfied from the testimony that the injuries complained of were not only caused by the defendant and were wrongfully and unlawfully caused, but that they were also willful, wanton and malicious in their charac-

ter. *Nailor v. Ponder*, 1 *Marv.* (*Del.*) 408, 41 *A*. 88; *Jordan v. D. & A. T. & T. Co.*, 1 *Boyce* (24 *Del.*) 107, 75 *A*. 1014.

In conclusion we say that if you believe from a preponderance of the evidence that the plaintiff's injuries were caused by the negligence of the defendant, remembering the law as we have stated it, and applying it to the facts of this case, and shall also believe that the plaintiff's own negligence did not proximately contribute to his injuries, your verdict should be in favor of the plaintiff. If, however, you are not satisfied by a preponderance of the evidence that the plaintiff's injuries were caused by the negligence of the defendant, or, if you believe from the testimony that the plaintiff's own negligence contributed in any way proximately to his injuries, your verdict should be in favor of the defendant.

If your verdict should be for the plaintiff, it should be for such sum as in your judgment from the evidence will reasonably compensate him for his injuries, including his loss of time and wages, his pain and suffering in the past, and such as may come to him in the future as the result of his injuries. And to the compensatory damages you may find for the plaintiff, if any, you may add such exemplary damages as you think should be awarded by way of punishment, if you are satisfied that under the facts and circumstances of the case, as shown by the evidence, that exemplary or punitive damages should be awarded, bearing in mind the instruction we have given you touching exemplary damages, namely, that such damages should not be given unless the jury is convinced that the injuries complained of were not only caused by the negligence of the defendant, but were wanton, willful, and malicious on its part.

If you find in favor of the defendant, your verdict should be for the defendant.